IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  15-CR-20045-UNGARO/OTAZO-REYS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| JORGE R. AMAD, | ) |
| Defendant. | ) |

ISSUE BRIEF
ADMISSIBILITY OF STATEMENTS MADE DURING PROFFER

COMES NOW the United States of America, by and through its undersigned attorneys, and hereby respectfully provides the Court an Issue Brief related to the admissibility of statements made by the defendant during an interview conducted under a Proffer Agreement.

In addition to statements JORGE R. AMAD gave on July 16, 2012, which the government intends to offer through a federal agent in its case-in-chief, AMAD also made additional statements to federal agents on October 23, 2012, under the limited protections of a proffer agreement.  The proffer agreement, dated October 23, 2012, is attached as Exhibit 1.  The government intends to offer the substance of the October 2012 statements if the defendant triggers the terms of the proffer agreement by: (1) testifying, (2) offering any evidence inconsistent with the statement through direct examination, (3) offering any evidence inconsistent with the statement through cross examination, or (4) making any argument during his opening, closing or during the trial inconsistent with the statement.

The proffer agreement provides in relevant part:

(5) In any proceeding, including sentencing, the government <u>may use Client's statements</u> and any information provided by Client during or in connection with the meeting <u>to cross examine Client, to rebut any evidence or arguments offered on Client's behalf</u>, or to address any issues or questions raised by a court on its own initiative.

1

Proffer Agreement page 2 (emphasis added).

"[A]ny statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty" is not admissible as evidence in a criminal trial. Fed. R. Evid. 410. However, a defendant may waive the rights he is accorded pursuant to Federal Rule of Evidence 410. *United States v. Mezzanatto*, 513 U.S. 196 (1995). "The construction of proffer agreements, like plea agreements, is governed generally by the principles of contract law, as we have adapted it for the purposes of criminal law." *United States v. Pielago*, 135 F.3d 703, 709 (11th Cir. 1998). "[A]bsent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *Mezzanatto*, 513 U.S. at 210.

In *United States v. Artis*, 261 Fed. Appx. 176 (11th Cir. 2008), the court upheld the use of a defendant's statement to impeach his testimony under the terms of a similar proffer agreement. *Id*. at 178 (the letter provided that "no statements made by [defendant] or his counsel could be used in the Government's case-in-chief; however, such statements could be used 'for the purpose of cross-examination, impeachment, and rebuttal should [defendant] testify at any proceeding in any manner contrary to this proffer.'"); see also *United States v. Dortch*, 5 F.3d 1056, 1068 (7th Cir. 1993) (finding a "defendant waives any objection to the use of his own proffer statements to impeach him at trial when he signs a proffer letter that specifically grants the government permission to impeach him if he testifies inconsistently ...").

The use of a defendant's statements need not be limited to impeachment. See *United States v. Hardwick*, 544 F.3d 565, 570-71 (3d Cir. 2008) (holding that during cross-examination,

defense elicited evidence that contradicted defendant's proffered statements, allowing the government to introduce statements into evidence); *United States v. Krilich*, 159 F.3d 1020, 1025 (7th Cir. 1998) (same). In *Hardwick*, 544 F.3d at 570, the defendant provided statements pursuant to a proffer agreement which allowed the government to use the statements "not only to cross-examine [defendant], but also 'to rebut any evidence or argument offered on [his] behalf.'" The defense then elicited testimony from government witnesses that was inconsistent with defendant's own statements. "The testimony elicited from these witnesses on cross-examination was aimed at inferring that [two other people], rather than [defendant], were responsible for the murders of [the victims], contrary to the statements [defendant] made under the proffer agreement." *Id*. The Third Circuit held defendant's statements were admissible because the defense had elicited testimony on cross-examination that was inconsistent with the proffered statements. *Id*. at 570- 71.

In *Krilich*, 159 F.3d at 1025, defendant provided statements under a proffer agreement that allowed prosecutors to use the proffer as evidence if defendant were to "testify contrary to the substance of the proffer or otherwise present a position inconsistent with the proffer." The court interpreted this clause to mean that "[i]ntroduction of the statements thus was proper if either [defendant's] testimony, or evidence that he presented through the testimony of others contradicted the proffer." *Id*. (citation omitted). At trial, the defense elicited testimony during cross-examination of the government's witnesses that contradicted the defendant's statements. The defense argued that such cross-examination did not trigger admission of defendant's statements. The *Krilich* court rejected that argument, holding that "[e]vidence is evidence, whether it comes out on direct or cross-examination." *Id*.

The following are some examples of statements AMAD gave in his October 2012 proffer

3

session that the government will seek to introduce if defendant offers evidence or arguments contrary to their substance:

- Guillermo and Giral (two co-conspirators) wanted AMAD and Beato (his partner) to inflate their invoice from about the normal $400,000 amount to about $1.1 million. AMAD admitted that he told Beato that he was alright with this because they really needed the business.

- AMAD admitted that the entire transaction was fraudulent.

- AMAD said he was told by Guillermo and Giral that ATI (AMAD's and Beato's company) would need to send $163,000 to Moreno (another co-conspirator) in Colombia.

- AMAD recalled that Guillermo and Giral told AMAD and Beato that they had to open an escrow account because the amount of money being deposited into ATI's bank account was too large and Guillermo did not know them well enough to trust them with that much money.

- AMAD confirmed that he and Beato used $100,000 of the money from the fraudulent Ex-Im loan to pay down ATI's line of credit at Banco Popular.

If the government seeks and the Court permits the admission of these statements, they will be admitted through the testimony of one of the interviewing agents.

This, the 2nd day of June, 2015.

        Respectfully submitted,

        WINFREDO A. FERRER
United States Attorney

ANDREW WEISSMANN
Chief, Fraud Section
Criminal Division
United States Department of Justice

By: /s/                                           .
WILLIAM H. BOWNE
A5501472
william.bowne2@usdoj.gov
Trial Attorney
PATRICK M. DONLEY
A5501108
Senior Ligation Counsel
patrick.donley2@usdoj.gov
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
(202) 514-0660

CERTIFICATE OF SERVICE

    The undersigned certifies that on June 2, 2015, the foregoing ISSUE BRIEF - ADMISSIBILITY OF STATEMENTS MADE DURING PROFFER was duly electronically served through the ECF system on the following attorneys of record:

Dennis G. Kainen at: dkainen@wkm-law.com

        By: /s/                              .
WILLIAM H. BOWNE