IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | NO. 15-CR-20045-UU |
| Plaintiff, | § | |
| v. | § | |
| JORGE R. AMAD, | § | |
| Defendant. | § | |

## STATEMENT OF THE OFFENSES

The United States Attorney, in and for the Southern District of Florida, and the Department of Justice, Criminal Division, Fraud Section ("the Government"), and the Defendant represent and agree that if this matter were to proceed to trial the Government would be able to prove the following beyond a reasonable doubt:

1. The Export Import Bank ("Ex-Im Bank"), located in Washington, D.C., is an executive branch agency of the United States and is responsible for promoting the export of United States goods to foreign companies. Ex-Im Bank issues loan guarantees to domestic banks for loans provided to foreign buyers purchasing goods manufactured in the United States.

2. Prior to issuing a loan guarantee, Ex-Im Bank requires the lending bank to document the transaction by completing an Application for Medium-Term Insurance ("Ex-Im Application"), which details the loan amount, down payment, the goods being purchased and shipped, and their country of origin.

1

3. The Ex-Im Application includes information memorializing the commercial transaction that is provided by participants in the loan transactions which included the identity of borrowers, lenders, brokers, suppliers and exporters.

4. Ex-Im Bank requires that the exporter certify to the lending bank, in the form of an Ex-Im Bank Exporter's Certificate, that United States goods have actually been purchased and shipped to the borrowers before Ex-Im Bank will issue a loan guarantee.

5. At all times relevant to the crimes charged in the Indictment, the defendant **JORGE R. AMAD ("AMAD")**, was a naturalized U.S. Citizen residing in Miami, Florida. **AMAD** was the co-owner of Approach Technologies International, LLC ("ATI"), a telemarketing software company, and JPA Investment, Inc. ("JPA"), a business consulting company both located in Miami Lakes, Florida.

6. Ricardo J. Beato ("Beato") was a U.S. Citizen residing in Miami, Florida and was the co-owner of ATI and JPA with **AMAD**.

7. Fredy Moreno-Beltran ("Moreno") was a Colombian citizen and the owner of a telemarketing company "Clientric" in Colombia. Moreno and his company Clientric were the represented buyer in a fraudulent Ex-Im guaranteed loan.

8. Co-Conspirator 1 ("CC # 1") was a naturalized U.S. citizen and the owner of an export company in Miami, Florida known as "G.E.M." G.E.M. was

identified as the exporter to Ex-Im in the fraudulent transaction.

9. Co-Conspirator 2 ("CC # 2") was a U.S. citizen and married to CC # 1. CC # 2 was a signator on G.E.M.'s bank account with CC # 1 and assisted CC # 1 in acting as the exporter in the fraudulent Ex-Im transaction.

10. Co-Conspirator 3 ("CC # 3") was a U.S. citizen residing in Miami, Florida, and the father of CC # 2. CC # 3 assisted CC # 1 and CC # 2 in acting as the exporter in the fraudulent Ex-Im transaction.

11. From 2009 to 2010, **AMAD** and others entered into a conspiracy and scheme to defraud the Ex-Im Bank by making materially false statements about the purchase of telemarketing equipment in order to obtain an Ex-Im Bank guaranteed loan. The goal of the conspiracy was to obtain and convert the loan proceeds for the personal benefit of the co-conspirators.

12. In or about September 2009, Moreno, CC # 1, CC # 2 and CC # 3 submitted to a private financing company in Windsor, Connecticut (hereinafter the "Lender") a false application for a short term receivables financing loan to be guaranteed by the Ex-Im Bank. The guarantee was approved under Ex-Im Bank policy APO-480324.

13. In or about September 2009, **AMAD**, Beato, Moreno, CC # 1, CC # 2 and CC # 3 caused documents to be submitted to the Lender and the Ex-Im Bank, including an ATI invoice **AMAD** knew was false, representing the amount, value, and origin of the equipment shipped to Colombia when in fact, materially less, if any, United States manufactured equipment was purchased or shipped.

14. On or about February 11, 2010, CC # 1 submitted a signed Ex-Im Bank Exporter's Certificate to the Lender and the Ex-Im Bank falsely certifying that the equipment was purchased and shipped to Moreno in Colombia.

15. On or about October 28, 2010, CC # 1, on a G.E.M. invoice, falsely confirmed to the Lender and the Ex-Im Bank that G.E.M. had sold $2,250,418.50 of United States manufactured equipment to Moreno in Columbia and had received the $326,000 required down payment.

16. On or about November 5, 2010, after receiving Ex-Im Bank's approval under policy APO-480324, the Lender disbursed a total of $1,924,418.50 of Ex-Im Bank insured loan proceeds in four separate disbursements. Of that total, **AMAD** and Beato received $1,076,237.92 on behalf of ATI which was represented to be a supplier in the fraudulent transaction. **AMAD** knew that the proceeds were obtained through fraud. **AMAD** and Beato sent: $163,000 to Moreno in two separate wire transfers on November 9 and 12, 2010; $711,383.70 to CC # 1, CC # 2, and CC # 3 on November 9, 2010; and retained $201,854.22 for their personal benefit.

17. On or about November 12, 2010, **AMAD**, as part of the scheme and artifice to defraud the United States, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, specifically, a wire communication transferring one hundred thousand dollars ($100,000) from Approach's bank account in Miami, Florida to Moreno's bank account in Bogota, Colombia.

18. From 2009 to 2010, **AMAD** and Beato entered into a conspiracy to commit money-laundering by using criminal proceeds obtained from the wire fraud in excess of $10,000 for their personal benefit. As part of that conspiracy on or about November 16, 2010, **AMAD** transferred and caused to be transferred $100,000 of criminal proceeds from an ATI bank account to a lender for repayment of an outstanding liability of ATI and JPA.

19. On or about August 3, 2011, Moreno defaulted on the fraudulent loan causing the Ex-Im Bank to suffer a loss of $1,951,643.01, as it was required to pay this amount to the holder in due course in satisfaction of its obligation to indemnify the default.

Date: 06/10/2015

JORGE R. AMAD
Defendant

Date: 6/10/15

DENNIS KAINEN, ESQ.
Attorney for the Defendant

Date: 6/10/2015

WILLIAM H. BOWNE
Trial Attorney
Florida Bar # A5501472
PATRICK M. DONLEY
Senior Ligation Counsel
Florida Bar # A5501108
Fraud Section, Criminal Division
United States Department of Justice